IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| COMMERCE BANK, CEDAR HILL CAPITAL PARTNERS, LLC, WELLS RIVER, and THOMASTON SAVINGS BANK,<br><br>     Plaintiffs,<br><br> vs.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>     Defendant. | Case No. 13-00517-CV-W-BCW |

**REPLY SUGGESTIONS BY DEFENDANT U.S. BANK NATIONAL ASSOCIATION
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

               James R. Wyrsch MOBar #20730
               Marilyn B. Keller MOBar #339179
               WYRSCH HOBBS & MIRAKIAN P.C.
               1000 Walnut Street
               Suite 1600
               Kansas City, Missouri 64106
               Tel: (816) 221-0080
               Fax: (816) 221-3280

               *Attorneys for Defendant*
               *U.S. Bank National Association*

Of Counsel:
Michael S. Kraut (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
Fax: (212) 309-6001

**TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT ........................................................................................ 1
II. ARGUMENT................................................................................................................... 2
    A.  The "No-Action" Clauses Bar the Claims Concerning Many of the Trusts .......... 2
    B.  Plaintiffs' "Failure to Act Because of a Conflict" Theory Fails ............................ 5
        1.  Plaintiffs Cannot Rewrite the PSA ............................................................. 5
        2.  Even if Plaintiffs Could Rewrite the PSA, They Fail To Plausibly
            Allege What U.S. Bank Should Have Done That It Failed To Do ............ 8
    C.  Plaintiffs Have Not Overcome Their Failure to Allege that Robo-signing
        Actually Occurred in Connection with a Single Loan in the Trusts ...................... 9
    D.  Plaintiffs Did Not Plead How They Were Harmed ............................................. 10
    E.  Plaintiffs' Individual Claims Fail For All of These Reasons............................... 12
III. CONCLUSION............................................................................................................. 13

**TABLE OF AUTHORITIES**

Page(s)

CASES

*AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*,
  896 N.E.2d 61 (N.Y. 2008) ............................................................................................................7

*Akenthos Capital Mgmt., LLC v. Compucredit Holdings Corp.*,
  677 F.3d 1286 (11th Cir. 2012) ....................................................................................................3

*Ambac Indemnity Corp. v. Bankers Trust Co.*,
  573 N.Y.S. 2d 204 (N.Y. Sup. Ct. 1991) .....................................................................................7

*Bakhtiari v. Al-Khaledy*,
  No. 4:11-CV-971 SNLJ, 2011 WL 6945107 (E.D. Mo. Dec. 30, 2011) ..................................13

*Beck v. Manufacturers Hanover Trust Co.*,
  218 A.D.2d 1 (N.Y. App. Div. 1st Dep't 1995) ..........................................................................6

*BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*,
  673 F.3d 169 (2d Cir. 2012) ........................................................................................................6

*BNYM v. Walnut Place*,
  819 F. Supp. 2d 354 (S.D.N.Y. 2011) ......................................................................................4, 6

*Butler v. Wells Fargo Bank, N.A.*,
  1:12–cv–2705–MJG, Dkt. No. 2, Complaint (D. Md. Sept. 10, 2012) .....................................9

*CFIP Master Fund Ltd. v. Citibank, N.A.*,
  738 F. Supp. 2d 450 (S.D.N.Y. 2010) .........................................................................................6

*Cruden v. Bank of New York*,
  957 F.2d 961 (2d Cir. 1992) ........................................................................................................3

*Dabney v. Chase Nat'l Bank*,
  196 F.2d 668 (2d Cir. 1952) ..................................................................................................4, 6, 7

*E.F. Hutton Sw. Props. II, Ltd. v. Union Planters Nat'l Bank*,
  953 F.2d 963 (5th Cir. 1992) .......................................................................................................5

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
  837 F. Supp. 2d 162 (S.D.N.Y. 2011) ............................................................................3, 4, 7, 13

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*,
  838 F.2d 66 (2d Cir. 1988) .......................................................................................................6, 7

*Feldbaum v. McCrory Corp.*,
  Civ. A. Nos. 11866, 11920, 12006, 1992 WL 119095 (Del. Ch. June 1, 1992) ....................3, 4

*Howe v. Bank of New York Mellon*,
  783 F. Supp. 2d 466 (S.D.N.Y. 2011) ......................................................................................3, 6

# TABLE OF AUTHORITIES

Page(s)

CASES

*Peak Partners, L.P. v. Republic Bank*,
 191 F. App'x 118 (3d Cir. 2006) ..................................................................................3

*SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*,
 2013 WL 1233544 (E.D.N.Y. Mar. 27, 2013) ...........................................................4

*Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*,
 No. 09 C 6904, 2010 WL 3324705 (N.D. Ill. Aug. 20, 2010) ("*Sterling I*") .........................3, 4

*Toone v. Wells Fargo Bank, N.A*.,
 2:11-cv-00170-TS, Dkt. No. 2-1, Complaint (D. Ut. Feb. 14 2011) .......................................10

## I. PRELIMINARY STATEMENT

In the Opposition,[1] Plaintiffs concede that they "seek to recover for losses sustained due to the improper servicing and foreclosure of loans in the Trusts" (Opp. at 10), yet Plaintiffs "do <u>not</u> claim that Defendant breached . . . any duty to monitor or investigate the servicing" and "do not allege a breach of any express contractual <u>duty</u>" to act to prevent robo-signing by U.S. Bank. (Opp. at 9 & 13). As a result, this entire case rests on Plaintiffs' theory that, because of an alleged conflict of interest, the Court should strike each provision of the PSAs that states that the RMBS Trustee has no responsibility for servicers' conduct and replace them with new provisions stating the exact opposite. Such judicial rewriting is not warranted in light of the unambiguous terms of the PSAs, which reflect the parties' bargained for and settled expectations, and the controlling law concerning the limited duties of an indenture trustee like U.S. Bank.

Even if the Court ignored the written agreements in favor of the imagined duty urged by Plaintiffs, the claims do not satisfy the *Iqbal/Twombly* plausibility test. In fact, the Opposition only weakened Plaintiffs' theory, given that Plaintiffs admit or fail to deny the following:

- Many of the PSAs have "no action" clauses requiring that demand be made on a Securities Administrator or Trust Administrator as a precondition to suing the RMBS Trustee. No such demand was ever made here.

- The Complaint does not allege robo-signing by most of the 35 servicers of loans in the Trusts. Even as to others, Plaintiffs have not identified a single loan in any of the Trusts for which a single foreclosure document was purportedly robo-signed or that led to damages.

- The mortgage loans in the Trusts are serviced by at least 35 different servicers, none of which is a defendant. Servicers—not U.S. Bank—are responsible for foreclosing on loans in the Trusts and signing foreclosure documents. To the extent a document pertaining to any loan in one of the Trusts was robo-signed, U.S. Bank did not sign it.

---

[1] Defined terms have the same meaning as in the Suggestions by Defendant U.S. Bank National Association in Support of its Motion to Dismiss (the "Moving Brief" or "Moving Br."). The Plaintiffs' Suggestion in Opposition to Defendant's Motion to Dismiss is referred to as the "Opposition" or "Opp."

1

- The PSAs state that the RMBS Trustee has no responsibility "to perform, or be responsible for the manner of performance of, any of the obligations of the Master Servicer under this Agreement or the Servicers under the Purchase and Servicing Agreements" and shall not "be responsible for any act or omission of the Master Servicer, the Depositor, the Seller, any Servicer or any Custodian."

- The PSAs provide that the Trustee has no obligation to commence an investigation into servicers' performance of their job functions unless directed by 25% of the Certificateholders. No such direction was issued here.

In short, Plaintiffs failed to plead that: (i) robo-signing occurred in the Trusts; (ii) the RMBS Trustee had knowledge of any such robo-signing; (iii) the RMBS Trustee had any duty to act to prevent robo-signing; or (iv) servicer robo-signing caused non-speculative damages to Plaintiffs, much less attributable to U.S. Bank. For these reasons, this case should be dismissed.

## II. ARGUMENT

### A. The "No-Action" Clauses Bar the Claims Concerning Many of the Trusts

In its Moving Brief, U.S. Bank demonstrated that the PSAs for certain Trusts contain "no action" clauses that require a demand to be made on a "notice party" other than the RMBS Trustee as a condition precedent to suing the RMBS Trustee[2] and that Plaintiffs made no such demand. Plaintiffs do not dispute the existence of these clauses or that Plaintiffs did not comply with them. Rather, Plaintiffs argue that the Court should ignore those clauses, relying on arguments that courts have rejected in analogous, if not identical, circumstances.

For certain Trusts (which Plaintiffs call "Group Two Trusts"), Plaintiffs argue that the no-action clauses only apply to suits against the Master Servicer or Servicer relating to an Event of Default. (Opp. at 19-20). However, the no-action clauses for these Trusts plainly apply to "any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement. . . ," (Snyder Decl., Ex. A), and no-action clauses are "strictly construe[d]." *Cruden*

---

[2] U.S. Bank identified 14 such Trusts, including CMALT-2006-A5. Plaintiffs now have conceded that they will dismiss claims relating to CMALT-2006-A5. (Opp. at 5 n.5).

*v. Bank of New York*, 957 F.2d 961, 968 (2d Cir. 1992). Moreover, Plaintiffs' argument has been rejected. *See Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.,* No. 09 C 6904, 2010 WL 3324705, at *4 (N.D. Ill. Aug. 20, 2010) (applying New York law) ("*Sterling I*"). In *Sterling I*, the court analyzed the scope of a no-action clause containing *identical* language to the clauses at issue here. *Id.* at *3. The court enforced the clause and dismissed the certificateholder's claims against the seller, originator, servicer, and trustee because the broad contractual language barred "any suit" and therefore "we do not believe that the clause can be read to apply only to claims against [the servicer] (or to claims specifically seeking damages caused by Events of Default)." *Id.* at *4 (dismissing claims against the seller, originator, and servicer).[3]

For other Trusts (which Plaintiffs call "Group Three Trusts" and "Group Four Trusts"), Plaintiffs argue that noncompliance with the demand requirement should be excused because the notice parties were Wells Fargo Bank, N.A. or Citibank, N.A., both of which Plaintiffs accuse of robo-signing. (Opp. at 20-21). Again, *Sterling I* explicitly rejects this argument. 2010 WL 3324705 at *4. As here, the *Sterling I* plaintiffs argued they should not be bound by the no-action clause because it would have been futile to ask the trustee (the notice party) to sue the

---

[3] Plaintiffs rely on *Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 474 (S.D.N.Y. 2011) for the proposition that a reference to an Event of Default in an express exception to the no-action clause saves their claims. This argument has been rejected by multiple courts besides *Sterling I*. *See Akenthos Capital Mgmt., LLC v. Compucredit Holdings Corp.*, 677 F.3d 1286, 1293 n.7 (11th Cir. 2012) (rejecting argument that "because the trustee demand exception contemplates an Event of Default, the entire no-action clause only applies to claims predicated on a Default. We do not agree that the scope of an exception to a rule should necessarily define the scope of the rule itself."); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 184 (S.D.N.Y. 2011) (rejecting argument that no-action clause is limited to claims arising out of "event of default"); *Peak Partners, L.P. v. Republic Bank*, 191 F. App'x 118, 126-27 (3d Cir. 2006); *Feldbaum v. McCrory Corp.*, Civ. A. Nos. 11866, 11920, 12006, 1992 WL 119095, at *6-7 (Del. Ch. June 1, 1992) (applying New York law) ("The policy favoring the channeling of bondholder suits through [the notice party] mandates the dismissal of individual-bondholder actions no matter whom the bondholders sue. So long as the suits to be dismissed seek to enforce rights shared ratably by all bondholders, they should be prosecuted by the [notice party].").

seller, originator and/or servicer because Plaintiffs also alleged wrongdoing by the trustee. The court rejected this argument, explaining: "there is an important difference between asking the [notice party] to sue itself – an 'absurd' requirement . . . and asking it to sue a third party, *even when the investor alleges wrongdoing by the [notice party]*." 2010 WL 3324705, at *5 (emphasis added). Other courts agree. *See SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.,* 2013 WL 1233544, at *12 (E.D.N.Y. Mar. 27, 2013); *Ellington*, 837 F. Supp. 2d at 186.[4]

Citing *Dabney v. Chase Nat'l Bank,* 196 F.2d 668, 670 (2d Cir. 1952) and *BNYM v. Walnut Place*, 819 F. Supp. 2d 354, 364 (S.D.N.Y. 2011), Plaintiffs argue that the no-action clause should not apply because Plaintiffs' lawsuit concerns "unwaivable duties of Defendant." (Opp. at 21-22). Neither of these cases even remotely suggests this. Moreover, whether or not duties are substantively "unwaivable" is irrelevant to whether Plaintiffs must comply with the procedural no-action clauses—which are a "common feature of bond indentures"—when suing for breach. *Sterling I*, 2010 WL 3324705, at *4.

Contrary to Plaintiffs' contentions, this is exactly the type of case for which no-action clauses apply. First, the clauses "protect against the exercise of poor judgment by a single bondholder or a small group of bondholders, who might otherwise bring a suit against the issuer that most bondholders would consider not to be in their collective economic interest." *Feldbaum,* 1992 WL 119095, at *6. Here, no Certificateholder ever asked the RMBS Trustee to investigate robo-signing (raising serious doubts as to whether they agree with Plaintiffs' theory), and unless the RMBS Trustee is found to be negligent, those Certificateholders would be responsible for reimbursing the RMBS Trustee for its expenses in defending this litigation. *See,*

---

[4] The cases that Plaintiffs cite for the proposition that the demand requirement of a no-action clause is excused when the trustee has an alleged conflict are inapposite (Opp. at 20-21) because in those cases the trustee was the only party upon whom demand could have been made.

-4-

*e.g.*, Baczynski Decl., Ex. A JPALT 2006-S3 PSA, at §6.12 (entitling the Trustee to be reimbursed from Trust assets). Second, no-action clauses are upheld to avoid a multiplicity of lawsuits. (Moving Br. at 11). U.S. Bank recently was sued in a case using a nearly verbatim complaint that asserted claims involving one of the Trusts. Kraut Decl. ¶ 6, Ex. 4. As such, this case is precisely the type of litigation that the "no-action" clauses are intended to prevent.

If the Court agrees that the no-action provisions are applicable, then it must dismiss the claims relating to the 13 Trusts Plaintiffs refer to as Group Two, Three, and Four Trusts. The rest of the claims should be dismissed for the reasons below.

### B. Plaintiffs' "Failure to Act Because of a Conflict" Theory Fails

Plaintiffs' entire case is predicated on U.S. Bank's supposed "conflict of interest." (Opp. at 1). However, the SAC alleges nothing more than a hypothetical conflict predicated on U.S. Bank's alleged conduct as a servicer for unrelated loans. (Moving Br. at 20). As explained by U.S. Bank—and not refuted by Plaintiffs—hypotheticals do not rise to the level of an actionable conflict of interest: "A mere hypothetical possibility" that an indenture trustee would allow its personal financial interest in other unrelated matters to sway its actions "does not suffice" to state a claim. *E.F. Hutton Sw. Props. II, Ltd. v. Union Planters Nat'l Bank*, 953 F.2d 963, 972 (5th Cir. 1992); Moving Br. at 20. But even if Plaintiffs actually had alleged a real, not hypothetical, conflict, their theory of liability still fails for reasons explained in the Moving Brief and below.

#### 1. **Plaintiffs Cannot Rewrite the PSA**

Under New York law, an RMBS Trustee's duties are limited to those set forth in the PSAs absent an "Event of Default," which is not alleged here. (Moving Br. at 6 & 19). Plaintiffs do not address any of the controlling case law set forth in the Moving Brief.

Instead, Plaintiffs dust off a 70-year old case for the unremarkable proposition that a trustee must avoid "conflicts of interest." But none of the cases cited by Plaintiffs suggests that the duty to avoid conflicts of interest imparts upon the RMBS Trustee an additional substantive duty to supervise servicers or to investigate absent direction from authorized certificateholders, both of which the PSAs expressly state the Trustee does not have to do.[5] Rather, as the court in *Dabney* recognized, the duty to avoid conflicts of interest means that the trustee may not allow a conflict of interest to influence *how it performs its delineated job functions*: The "trustee may confine his duties. That question is necessarily determined by the trust deed; but it has nothing to do with the trustee's duty to discharge **whatever obligations he does assume** with absolute singleness of purpose." *Dabney*, 196 F.2d at 671 (emphasis added).[6] The court in *Dabney* did

---

[5] Plaintiffs rely on *BNYM v Walnut Place*, 819 F. Supp. 2d 354, 364 (S.D.N.Y. 2011), but that decision was vacated on appeal. *See BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 179-80 (2d Cir. 2012). Plaintiffs also cite *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 483 (S.D.N.Y. 2011), for the proposition that a trustee has a duty to avoid conflicts. *Howe* has nothing to do with this case. The issue presented was whether a bond trustee, as a result of a threat of claim by the bond issuer, breached a duty by allowing the issuer to repurchase bonds, thereby depriving bondholders of payments. In other words, *Howe* focused entirely on the trustee's conduct in performing its express contractual duties (*i.e.*, disposition of trust assets). *Howe* in no way suggests that, in fulfilling a duty to avoid conflicts, the trustee takes on affirmative obligations to engage in tasks – such as investigating or monitoring a servicer – that are diametrically opposite to those set forth in the trust indenture, which is what Plaintiffs seek here. Plaintiffs' reliance on *Beck* is also misplaced because the court only found that the trustee had a duty of undivided loyalty after an Event of Default had occurred, which did not occur here. *Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1, 12-13 (N.Y. App. Div. 1st Dep't 1995).

[6] *See also Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 70-71 (2d Cir. 1988) (trustee does not have an implied duty to act "over and above the duties and obligations it undertook in the indenture" which "are strictly defined and limited to the terms of the indenture"); *CFIP Master Fund Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 475 (S.D.N.Y. 2010) (rejecting investor's claim that trustee had an improper conflict of interest when trustee acted consistently with the terms of the trust indenture).

not impose on the trustee extra job responsibilities as a result of the duty to avoid conflicts, as Plaintiffs urge here.[7]

Moreover, to the extent that *Dabney* arguably suggested that an indenture trustee has a duty of undivided loyalty prior to an Event of Default, the Second Circuit has since repudiated that notion unequivocally. The Second Circuit has made clear that *Dabney* did not impose on indenture trustees broad implied fiduciary duties that do not appear in the indenture: "*Dabney* . . . does not support the broader proposition that an implied fiduciary duty is imposed on a trustee to advance the financial interests of the debenture holders during the period prior to default." *Elliott,* 838 F.2d at 73.[8] As a result, the Second Circuit rejected the *Elliott* plaintiffs' allegations of a conflict of interest, reasoning that:

> [E]xcept for bald assertions of conflict of interest, Elliott presents no serious claim that [the trustee] personally benefitted . . . Rather Elliott's claim essentially is that the trustee was under a duty – implied from the indenture . . . or state law – to secure greater benefits for debenture holders over and above the duties and obligations it undertook in the indenture. No such implied duty can be found . . . .

*Elliott*, 838 F.2d at 70-71 (explaining that, prior to an event of default, the trustee has no implied fiduciary duties under New York state common law or the Trust Indenture Act of 1939). Plaintiffs cite no decision in which a court held that a trustee's duty to avoid conflicts of interest

---

[7] *Dabney* also is factually inapposite. In *Dabney*, the bond trustee was also a creditor of the debtor. 196 F.2d at 669. The trustee's concern about the debtor's solvency led the trustee to collect on a loan the debtor owed the trustee personally rather than use those funds to repay the bondholders. *Id.* at 669, 671. The court recognized that a trustee's duty to avoid conflicts prevented it from profiting at the expense of the trust and that the trustee breached that duty by stepping in front of the beneficiaries. *Id.* at 672-73. Those facts are a far cry from what Plaintiffs allege here. (Moving Br. at 19-20).

[8] *See also Ambac Indemnity Corp. v. Bankers Trust Co.*, 573 N.Y.S. 2d 204, 207 (N.Y. Sup. Ct. 1991) (calling into question whether Dabney stands for the proposition that an indenture trustee has broad fiduciary obligations); *c.f. AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*, 896 N.E.2d 61, 67 (N.Y. 2008) (holding that indenture trustee does not have pre-default fiduciary duties); *Ellington*, 837 F. Supp. 2d at 192-93 (finding duty to avoid conflicts of interest is not a fiduciary duty).

-7-

Case 4:13-cv-00517-BCW   Document 51   Filed 10/07/13   Page 11 of 19

means that the trustee assumed additional substantive job duties, let alone duties for which it is expressly exculpated in the governing indenture.[9]

### 2. Even if Plaintiffs Could Rewrite the PSA, They Fail To Plausibly Allege What U.S. Bank Should Have Done That It Failed To Do

Plaintiffs allege that, because of an alleged conflict, "Defendant failed to prevent, remedy or even address the robo-signing within the Trusts at issue." (SAC, ¶ 47). In reaching this conclusion, Plaintiffs make three incongruous statements, which undermine their claims.

**First:** Plaintiffs concede that the Trustee had no duty to *sua sponte* investigate to see if servicers might be robo-signing. (Opp. at 8).

**Second:** Servicer robo-signing was the subject of massive government investigations that ultimately resulted in government consent orders announced in April 2011. These publicly available orders reflect that "robo-signing" had been identified and addressed by regulators.

**Third:** Plaintiffs state that U.S. Bank should be imputed with knowledge of robo-signing as of April 2011, when the consent orders were announced.

Given their acknowledgement that U.S. Bank had no duty to investigate, Plaintiffs appear to argue that U.S. Bank should have taken action in April 2011 *after* regulators stepped in and addressed the issue. Plaintiffs offer no credible answer as to what specific action U.S. Bank was required, but failed, to take at that time. The best Plaintiffs can muster is that "Defendant breached its duty to avoid conflicts of interest, and because of this egregious conflict it took no action, *not even as much as to alert the Plaintiffs* . . . ." (Opp. at 8-9). Surely Plaintiffs—sophisticated investment professionals that manage public companies and investor money—

---

[9] Plaintiffs mischaracterize U.S. Bank's argument as relying on a distinction between acts and omissions. (Opp. at 14). U.S. Bank made no such argument.

-8-

cannot credibly suggest that they were prejudiced because the RMBS Trustee did not alert them as to publicly disclosed robo-signing consent orders.

### C.  Plaintiffs Have Not Overcome Their Failure to Allege that Robo-signing Actually Occurred in Connection with a Single Loan in the Trusts

In the Moving Brief, U.S. Bank established that: (i) the loans in the Trusts were serviced by 35 different financial institutions,[10] (ii) Plaintiffs had only alleged robo-signing by a handful of these institutions, and (iii) Plaintiffs did not plead a single actual instance of robo-signing with respect to any loans in the Trusts. Plaintiffs ignore and thereby concede these points. The question becomes whether Plaintiffs' claims that Wells Fargo entered into consent orders concerning document execution practices is sufficient to allege that robo-signing actually occurred *with respect to loans in the Trusts*.

In the Moving Brief, the RMBS Trustee catalogued numerous opinions in which courts held that general allegations that a bank engaged in robo-signing are not sufficient to satisfy the federal pleading standards of *Iqbal* and *Twombly*; rather robo-signing allegations must be specifically tied to the loan or trust(s) at issue. Plaintiffs offer no countervailing authority, and say only that these cases are distinguishable because "Plaintiffs allegations are more detailed and far less generalized than those in" the cases cited by U.S. Bank. (Opp. at 7). Plaintiffs are wrong.

Plaintiffs focus on *Butler* and *Toone*. In *Butler*, as here, the plaintiffs tried to satisfy their pleading requirements by citing to news reports. *Butler v. Wells Fargo Bank, N.A.*, 1:12–cv–2705–MJG, Dkt. No. 2, Complaint at ¶ 17 (D. Md. Sept. 10, 2012) ("As would later be revealed

---

[10] In the Moving Brief, U.S. Bank pointed out that Plaintiffs' theory that robo-signing under the watch of Wells Fargo as master servicer caused their losses was flawed, given that Wells Fargo was not the master servicer of all of the Trusts. (Moving Br. at 13). Rather than concede that their losses must have a different cause, Plaintiffs merely agreed to dismiss their claims as to trusts that Wells Fargo does not master service (CMALT 2006-A5 and RFMSI 2006-S5) and pretend that their theory remains intact. (Opp. at 5 n.5).

-9-

by various news media, during this time, many mortgage servicers and substitute trustees were filing affidavits and papers in foreclosure actions, where (a) the named affiants or signatories did not sign the documents or (b) the named affiants or signatories did not review or confirm the accuracy of the information asserted in the documents prior to signing them."). In *Toone*, plaintiffs went further and alleged that certain documents in connection with their action were robo-signed: "There next appears an endorsement from Accubanc to Norwest Mortgage. It is not dated. Upon information and belief, the signature of 'Jan B. Hatmick' was a 'robo-signed' or 'robo perjured' signature." *Toone v. Wells Fargo Bank, N.A.*, 2:11-cv-00170-TS, Dkt. No. 2-1, Complaint at ¶¶ 30 (D. Ut. Feb. 14, 2011). The courts in both cases—and in the many other cases cited by U.S. Bank that Plaintiffs did not address—held that such generic allegations are just not enough. Tellingly, Plaintiffs do not cite a single case in which allegations such as those made here were deemed sufficient.

### D. Plaintiffs Did Not Plead How They Were Harmed

In the Opposition, Plaintiffs focus on four types of damages that they allegedly suffered. (Opp. at 10). But Plaintiffs do not tie any of these damages theories to their liability theory that beginning in April 2011, U.S. Bank failed to address robo-signing. Moreover, U.S. Bank is not suggesting that Plaintiffs are subject to a heightened pleading standard or must prove damages at this juncture. To be clear, U.S. Bank argues that Plaintiffs' four damages theories, summarized below, are not connected to their liability theory and are not remotely plausible.

**Theory 1**: **Wells Fargo improperly passed foreclosure fees onto investors.**

Plaintiffs do not explain what these fees are or how they are tied to some alleged breach by U.S. Bank of a phantom duty to "alert Plaintiffs" of publicly-disclosed allegations of robo-signing. Rather, Plaintiffs seek to foist upon U.S. Bank a duty to monitor fees that servicers

-10-

charge, which does not appear in the PSAs or otherwise exist. Moreover, the alleged conflict Plaintiffs have identified in the SAC concerns robo-signing only, not improper foreclosure fees.

> **Theory 2: Foreclosures have gotten more expensive as a result of the "costs associated with preparing foreclosure documentation" and new "enhanced foreclosure processes" designed to prevent robo-signing.**

As set forth in the Moving Brief, this theory makes no sense. (Moving Br. at 17). Plaintiffs blame U.S. Bank for not stopping robo-signing and in the same breath argue that U.S. Bank should pay *damages* for increased costs that ensued when robo-signing ceased. They cannot have it both ways. Moreover, the SAC does not allege that U.S. Bank had any role in implementing the "enhanced foreclosure processes." Whether the processes were implemented by servicers or regulators, under no plausible theory could U.S. Bank be financially responsible for the costs of enhanced procedures now used by servicers to prevent robo-signing.

> **Theory 3: There is a "logjam" in foreclosures leading to increased expense.**

It is not clear whether this "logjam" refers to court delays, or a belief that servicers are processing foreclosures too slowly. Either way, Plaintiffs do not allege that U.S. Bank controls the speed of foreclosures, or how its alleged failure to act in April 2011, when it allegedly was imputed with knowledge of robo-signing, has any effect on foreclosure speed.

> **Theory 4: Defendant's actions have "destroyed the value of the Trusts."**

Plaintiffs offer no explanation of how the value of the Trusts was "destroyed," or how U.S. Bank's failure to take action in April 2011 has affected the value of the Trusts.

Moreover, Plaintiffs concede that some (actually, 17)[11] of the Trusts contain clauses that limit U.S. Bank's liability, rendering it not responsible for "special, indirect, or consequential

---

[11] Plaintiffs argue that U.S. Bank "provides no evidence that similar provisions are present in all of the PSAs for each of the other Trusts." (Opp. at 11). They are not. However, these provisions do appear in the PSAs for 17 of the 29 Trusts, as reflected in Exhibit A to the Declaration of Ariane S. Baczynski dated October 7, 2013, filed herewith.

-11-

damages." Plaintiffs argue that the clauses do not apply because "Defendant directly harmed Plaintiffs by allowing Trusts to incur costs and sustain losses caused by Defendant and its affiliates' failure to even prove they owned the underlying mortgages, because they knowingly allowed the servicers and sub-servicer to forge documents and breach recording statutes." (Opp. at 12). The following are some of the flaws in that sentence:

- "*allowing* Trusts to incur costs and sustain losses" is necessarily indirect;
- a statement that affiliates of U.S. Bank failed to prove that they owned the underlying mortgages is inconsistent with the SAC as no affiliate of U.S. Bank is mentioned in the SAC. The statement also is irrelevant to servicers' alleged robo-signing, thereby rendering it, at best, indirectly related to Plaintiffs' alleged losses;
- a statement that the RMBS Trustee "knowingly allowed" forgery is not pled in the SAC and implies a supervisory role over loan servicing that is not supported by the PSAs;
- the SAC does not address recording statutes, and under the PSAs, RMBS Trustees are not responsible for recording mortgage loan documents with county recorders.

Apart from the flaws in that sentence, the theory itself does not make sense. The alleged damages that Plaintiffs seek, such as increased trust expenses resulting from decisions by states to enhance their foreclosure requirements, could not have been directly caused by the RMBS Trustee's actions, and as a result, the SAC should be dismissed.

### E. Plaintiffs' Individual Claims Fail For All of These Reasons

Plaintiffs clarified that each of their claims is based on the theory that U.S. Bank has a duty to take some unspecified action with respect to servicer robo-signing. Each claim must fail for reasons set forth above, plus those that follow.

Count III, premised on a purported breach of a fiduciary, must be dismissed. As established in the Moving Brief, an RMBS trustee has no pre-default fiduciary duties. (Moving Br. at 22). Plaintiffs do not respond to this and therefore concede the argument.

-12-

For Count IV, Plaintiffs assert that an RMBS trustee can be liable for "failure to perform basic non-discretionary ministerial tasks." (Opp. at 17) (quotation omitted). Plaintiffs then claim that U.S. Bank is liable because it should have signed foreclosure documents itself but instead allowed Wells Fargo to do so. This is surprising given the explanation in the treatise authored by Plaintiffs' counsel that the servicer, not the RMBS trustee, is responsible for conducting foreclosures. Talcott J. Franklin and Thomas F. Nealon III, Mortgage and Asset Backed Securities Litigation Handbook, § 5:106 ("[S]ervicers are responsible for enforcing the terms of a defaulted securitized loan. This responsibility may include . . . foreclosing on the property. . . .").

Count V is an alleged breach of contract. Plaintiffs concede that they have not identified the contract provision that was breached, responding that there is no requirement for them to do so. (Opp. at 18). Of course, under New York law "a plaintiff must identify what provisions of the contract were breached . . . ." *See Ellington*, 837 F. Supp. 2d at 189 (citations omitted).[12]

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC. Dismissal of the SAC should be with prejudice as repleading would not enable Plaintiffs to cure the fundamental flaw in their theory that seeks to hold the RMBS Trustee liable for alleged servicing misconduct.

---

[12] *See also Bakhtiari v. Al-Khaledy*, No. 4:11-CV-971 SNLJ, 2011 WL 6945107, at *4 (E.D. Mo. Dec. 30, 2011) (plaintiff must plead more than "[v]ague references" to agreements and provisions allegedly breached to state a breach of contract claim).

-13-

Dated:   Kansas City, Missouri                    Respectfully submitted,
         October 7, 2013

                                                  WYRSCH HOBBS & MIRAKIAN P.C.


                                                  /s/  James R. Wyrsch
                                                  James R. Wyrsch         MOBar #20730
                                                  Marilyn B. Keller       MOBar #39179
                                                  1000 Walnut Street
                                                  Suite 1600
                                                  Kansas City, Missouri 64106
                                                  Tel: (816) 221-0080
                                                  Fax: (816) 221-3280

                                                  *Attorneys for Defendant*
                                                  *U.S. Bank National Association*

Of Counsel:
Michael S. Kraut (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
Fax: (212) 309-6001

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2013, this document was filed electronically via this Court's Electronic Case Filing system, with notice of this filing served electronically by the Court's Clerk to all designated persons.

/s/ James R. Wyrsch
*Attorneys for Defendant U.S. Bank National Association*